**UNITED STATES ex rel.
Ralph MASELLI**

**v.**

**Frederick REINCKE, Warden, Connecticut State Prison.**

**Civ. No. 11501.**

United States District Court
D. Connecticut.

Nov. 21, 1966.

Joseph D. Harbaugh, New Haven, Conn., for petitioner.

George Tiernan, State's Atty., New Haven, Conn., for respondent.

BLUMENFELD, District Judge.

After a jury trial at which he was represented by retained counsel, the petitioner was found guilty of the crime of robbery and on June 19, 1964, he was sentenced to a term of imprisonment for not less than four nor more than seven years which he is presently serving in Connecticut State Prison.

Following his conviction, he told his counsel that he wanted to appeal, but no appeal was taken. This set in motion a number of legal steps leading to this petition for a writ of habeas corpus. The first (April 8, 1965) was a petition to the state court based on the ground that he was indigent after the trial and had not been advised of his right to have the assistance of court-appointed counsel

for an appeal. This petition was dismissed by the state court (September 22, 1965) on the ground that "it is unlikely that his counsel did not inform him that he could apply to the Court for the appointment of counsel to prosecute an appeal if he was without funds." His motion for a certification to appeal to the Connecticut Supreme Court was denied. He then brought a petition for habeas corpus to this court, which was dismissed (October 25, 1965) on the rather strict ground that he had not exhausted state remedies since he had not brought a motion to the criminal side of the state court setting forth his indigency and requesting the assistance of counsel. He pursued that course. His motion was denied (June 1, 1966) without opinion and a certification of appeal therefrom was denied. Now state remedies have been exhausted.

■ To begin with, the ambiguous finding of the state habeas court and the scanty record made a hearing necessary. Habeas Corpus Act, P.L. 89–711, 89th Congress, Second Session, approved November 2, 1966.[1] See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). It was noted in a similar situation that a much more solid decision could be reached if testimony were heard from Maselli's trial counsel who was available and who could testify without restraint of the attorney-client privilege. United States ex rel. Mitchell v. Follette, 358 F.2d 922, 927–928 (2d Cir. 1966). That had not been done. Counsel was appointed to represent the petitioner in this court.

■■ It is now settled that an indigent criminal defendant has a constitutional right to appeal from his conviction and to the assistance of counsel. The sixth amendment provides: "In all crim-

inal prosecutions the accused shall enjoy the right to * * * have the Assistance of Counsel for his defence." Through the fourteenth amendment, this has been extended to the states. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Since Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), appellate review and the assistance of counsel have been made available to indigent criminal defendants by Connecticut's courts.

■ Although Rule 32, Fed.R.Crim.P. provides that, "[a]fter imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal *in forma pauperis*," this doctrine is not a constitutional imperative binding on the states. United States ex rel Mitchell v. Follette, supra, 358 F.2d 922; United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (2d Cir. 1966).

■■ In *Mitchell* and *Bjornsen*, the court emphasized the point that since the state permits an indigent to appeal and will appoint counsel to assist him on his request, absent such a request from an indigent there is no "state action" to which the fourteenth amendment can be applied. In delimiting action for which the state may be held responsible, the *Mitchell* opinion noted at 358 F.2d 927 that the court "is not a surety for the proper performance of counsel, whether assigned or retained," and is not accountable for an attorney's failure to perform his professional duty.

■ Although there is no affirmative duty on the part of the court to take steps to insure that a financially able

---

1. The provisions relevant here are in subsection (d) of the amended 28 U.S.C. § 2254, which provides that a "determination after a hearing on the merits of a factual issue, made by a State court * * * shall be presumed to be correct, unless * * * it * * * appear[s] * * *

(1) that the merits of the factual dispute were not resolved in the State court hearing;
&ast; &ast; &ast; &ast; &ast;
(3) that the material facts were not adequately developed at the State court hearing * * *"
28 U.S.C. § 2254(d), as amended, 80 Stat. 1104 (1966).

defendant is not deprived of his right to appeal, it is not a contradictory proposition to hold that the loss of a defendant's right to appeal caused by conduct of his counsel may constitute a deprivation of constitutional due process. The authorities reveal that special circumstances which are hardly academic or scarcely episodic do occur. Thus, a defendant will be allowed to appeal out of time if "he is able to show that his employed counsel failed through fraud or deceit to appeal," Camp v. United States, 352 F.2d 800, 801 (5th Cir. 1965), or that there has been "misconduct of * * * counsel amounting to a breach of his legal duty faithfully to represent his client's interests * * *" Kennedy v. United States, 259 F.2d 883, 886 (5th Cir. 1958), cert. denied, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959). And "failure to take an appeal within the time permitted, while at the same time assuring petitioner that such an appeal would be taken" was held to violate the petitioner's constitutional rights in Application of Tomich, 221 F.Supp. 500 (D.Mont.1963), aff'd on other grounds, 332 F.2d 987 (10th Cir. 1964). Conceptually, this rule is said to be based on the inherent power of the court to vacate a judgment obtained by fraud. Calland v. United States, 323 F.2d 405, 408 (1963), aff'd after remand, 341 F.2d 44 (7th Cir. 1965). "State action" is not involved. Cf. United States ex rel. Wilkins v. Banmiller, 325 F.2d 514, 524 (3d Cir. 1963) (dissenting opinion of Chief Judge Biggs), cert. denied, 379 U.S. 847, 85 S.Ct. 87, 13 L.Ed.2d 51 (1964).

 Conduct by counsel which is short of actual fraud will sometimes entitle his client to an appeal out of time. In this circuit, it has been held that incompetency of counsel, to violate this constitutional right, "must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). See Dodd v. United States, 321 F.2d 240, 243 (9th Cir.

1963). See generally, Effective Assistance of Counsel for the Indigent Defendant, 78 Harv.L.R. 1434 (1965). While it may be true in some cases that such blatant mistakes of counsel take place in the presence of the court, that is not necessary to invoke the rule. Frequently this determination will turn on facts outside the record, Camp v. United States, supra, 352 F.2d 800, e. g., whether a substantial defense was available and not raised, Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14 (1945); see United States ex rel. Darcy v. Handy, 203 F.2d 407, 416–418 (3d Cir.) cert. denied, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375 (1953); whether counsel consulted the defendant and investigated properly, Abraham v. State, 228 Ind. 179, 91 N.E. 2d 358 (1950); cf. Application of Tomich, supra, 221 F.Supp. 500. More in point here is Wainwright v. Simpson, 360 F.2d 307 (5th Cir. 1966), where the court said at 309: "However laudable his motive, court-appointed counsel for [Maselli] had no authority, without consulting with or obtaining the consent of his client, deliberately to forego [Maselli's] right to move for a new trial or to appeal. When he did so, counsel proved himself ineffective." (n. 4 omitted).

 Turning now to the facts of this case. After the jury returned a verdict of guilty, the petitioner told his counsel he wanted to appeal. What happened then was explained by his counsel at the hearing and in a letter. I quote from the letter:

"My recollection of the situation is that after the conviction in Superior Court on July 12, 1964, I discussed the matter of an appeal with Mr. Maselli. I informed him that I did not consider myself an appeal specialist and if he wished to take an appeal, he would do well to contact one of the noted appeal attorneys in the city. He stated to me that he was without funds and that unless some miracle happened, he would not be able to afford an appeal. I also believe that at the present time there is still money owing our firm of approximately $250.00 for services

rendered for the trial of that case and an appearance in Middletown."

Both petitioner and his counsel confirmed this at the hearing. It is clear to me, and I find, that he was not informed by his counsel and was not otherwise aware of the fact that the state would permit him as an indigent to appeal without the payment of fees and appoint counsel to assist him until long after the time to file an appeal had expired. Throughout that period he was and still is indigent. Instead of casting the petitioner adrift, where he might have been held accountable for a failure to take steps in his own behalf, his counsel continued to represent him, thereby permitting Maselli to continue to rely on him. It was counsel's duty to "contest * * * every step of the way leading to final disposition of the case," cf. Avery v. State of Alabama, 308 U.S. 444, 450, 60 S.Ct. 321, 84 L.Ed. 377 (1940), including the preliminary phase of obtaining permission to appeal in forma pauperis. Cf. Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir.), cert. denied, 358 U.S. 889, 79 S.Ct. 131, 3 L.Ed. 2d 116 (1958).[2]

The effect of counsel's conduct was to obstruct Maselli from discovering—not merely to leave him passively uninformed—of his right to a free appeal and counsel to assist him.[3] Under such circumstances, the federal courts would grant him a right to appeal his conviction. Lyles v. United States, 346 F.2d 789 (5th Cir. 1965).

At the time, the defendant was also facing another criminal charge brought in Middlesex County. His counsel testified in this court that he intended to attempt to reach an agreement whereby in consideration of a plea of guilty the prosecutor would recommend a sentence in the Middlesex County case to run concurrently with the one already imposed. A contention that Maselli's counsel forfeited an appeal for tactical reasons on which advocates might honestly disagree is absurd. Cf. United States ex rel. Robinson v. Pate, 312 F.2d 161 (7th Cir.) cert. denied, 373 U.S. 943, 83 S.Ct. 1553, 10 L.Ed.2d 698 (1963). Counsel's reason pertained only to his own considerations —his explanation was that he had a one-man office. His decision, in the hope of negotiating with the prosecutor after Maselli would be sentenced instead of filing a motion to set the verdict aside, and to file an appeal if it was not, was horribly inept.[4] No new knowledge was needed. The state had simply not introduced evidence to prove the identity of Maselli as the person who had committed the crime.

He was one of two co-defendants. Two men had been seen running from the direction of the home of the robbery victim and entering a car driven by a third man. Someone else took down the license number of the car they entered. Later that evening, the car was found at the home of its owner. The owner and the two co-defendants were in the house. No one identified the three men who had been in the vicinity of the robbery earlier

2. It would have been a simple matter to file a motion to set aside the verdict on the ground that it was contrary to the evidence. Considering that proceedings on appeal are suspended during July and August, a simple notice of intention to apeal would have carried the case into that suspension period to extend the time for Maselli to obtain other counsel.

3. Promptly after sentence Maselli was incarcerated in the Connecticut State Prison.

4. After the time to appeal expired so did all supposed bargaining power. But the

petitioner had never agreed to forego an appeal. And, like the decision whether to appeal, the decision of how to plead was for the defendant. When the time for trial came the petitioner refused to change his plea. It was not until November 10, 1964, when his counsel entered his withdrawal in the Middlesex case that his counsel ended his representation of the petitioner. A public defender replaced him. That case is still awaiting trial on a substituted information, the original judgment having been set aside. (Case No. Crim. 4393).

that evening. Maselli's co-defendant Reid, convicted along with him in the same trial, filed a motion to set aside the verdict and, upon its denial by the trial court, he appealed. The Connecticut Supreme Court in State v. Reid, 154 Conn. 37, 221 A.2d 258 (June 21, 1966), unanimously ordered the verdict set aside on the ground that there was insufficient evidence to connect Reid with the robbery. Its opinion noted that Maselli had been tried jointly with Reid and convicted, and it touched upon the evidence relating to him. Nothing that would account for a different result in Maselli's case had he appealed was mentioned.[5] The due process claim that there was a total lack of evidence to support the conviction, see Thompson v. City of Louisville, 362 U.S. 199, 206, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), has not been raised in the petition before me and, since it has not been squarely presented to the state court,[6] I should like to make it plain that I do not rely on it. Nonetheless, in considering the issue of incompetency of Maselli's counsel, the fact that it was not provable on all the evidence that Maselli played any part in the crime which had been committed, highlights the substan-

tiality of the prejudice suffered by the failure of counsel to file a motion to set aside the verdict and at the very least to inform Maselli of his right as an indigent to an appeal with the aid of counsel. Cf. Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Counsel's representation of Maselli was so ineffective as to shock the conscience and render the proceedings a mockery of justice.

Even if the test includes as an additional requirement that the failure of counsel must be of such dimension that it is "the duty of the court or the prosecution to observe it and correct it," Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 670, cert. denied, 325 U.S. 889, 65 S. Ct. 1576, 89 L.Ed. 2002 (1945), it has been met here. While I do not say that the trial court should have known of the misinformation about the right to counsel on appeal the general syndrome of ineffectiveness was sufficiently apparent on the record to the courts and prosecutor. Cf. Jones v. Huff, supra, 80 U.S. App.D.C. 254, 152 F.2d 14, 16. The prejudice is not speculative. If the trial court failed to take cognizance of this ineffectiveness at the time Reid filed a

5. Three men were arrested for the crime, and searched by police. On Reid no money was found. On Maselli no money was found. On the third person, Rocco, $371 was found, in addition to $150 in bills too large to have been connected with the robbery (the robbery involved $1326). Some of this money was admittedly Maselli's, which he had given to Rocco. The specific grounds on which the Supreme Court reversed Reid's conviction made it clear that the presence of this money was not part of an evidentiary chain linking Maselli to the robbery.

"The money found by the police in the possession of Rocco and Maselli was not traced to Mrs. Roessler [the victim], did not add up to the amount taken from her, included bills of larger denomination, and could not logically connect the defendant with the robbery." (154 Conn. at 40, 221 A.2d at 259).

6. Had that claim been presented the question of Maselli's loss of the right to appeal would rest on a different basis. Instead of whether he had been deprived of a right to an appeal in which he might raise any nonfrivolous claim of error made in the state proceedings, the sole issue would be whether his constitutional right not to be convicted without supporting evidence had been violated. Then instead of whether his belated attempt to appeal had been thwarted by incompetency of counsel or fraud, the initial question would be whether there had been an "intentional relinquishment or abandonment" by Maselli "of a known right or privilege" under the "controlling standard." See Fay v. Noia, 372 U.S. 391, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In such a case, in order to defeat the right to release on habeas corpus, there would need to be a showing that the petitioner "after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts * * * [T]he standard here put forth depends on the considered choice of the petitioner" (372 U.S. at 439, 83 S.Ct. at 849).

motion to set aside the verdict and his co-defendant Maselli did not, after the Supreme Court rendered its opinion the situation could have been observed and corrected. The Supreme Court pointedly added a footnote in the Reid opinion, "Maselli was also charged with the robbery of Mrs. Roessler, under a separate information, was tried jointly with the defendant and was found guilty by the jury." (154 Conn. at 39, 221 A.2d at 259).

In conclusion, Maselli was unconstitutionally deprived of his right to move to have the verdict set aside and to appeal. While the Connecticut Supreme Court has already impliedly ruled on the very same record in the appeal of Reid that the verdict against Maselli should be set aside, it does not follow that this court may by-pass orderly procedure on the basis of that implication and grant him a new trial without more ado. Wainwright v. Simpson, supra, 360 F.2d at 310. Nor does this court have the power to enlarge this state prisoner on his personal recognizance (he is without funds to provide bail). United States ex rel. Carapa v. Curren, 297 F. 946, 955, 36 A.L.R. 877 (2d Cir. 1924). Cf. O'Brien v. Lindsey, 202 F.2d 418 (1st Cir. 1953).

The court wishes to express its appreciation for the diligence and professional skill exercised by Mr. Joseph D. Harbaugh, who represented the petitioner in this case as court-appointed counsel.

It is ordered that this court's writ of habeas corpus shall issue forthwith, provided, however, that the petitioner may be detained within the respondent's custody for a period not to exceed twenty (20) days, upon expiration of which the petitioner shall stand released and discharged unless the State of Connecticut has granted him a right to appeal as from the denial of a motion to set aside the verdict and appointed counsel to assist him, or sets the verdict aside and grants him a new trial.